Filed 5/12/25

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

|  |  |
|---|---|
| COUNTY OF NEVADA et al., | C101966 |
| Petitioners, | |
| v. | (Super. Ct. No. CU0000079) |
| THE SUPERIOR COURT OF NEVADA COUNTY, | |
| Respondent; | |
| A.C., a Minor, etc., et al., | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDINGS in mandate. Robert Tice-Raskin, Judge. Petition granted.

Manning & Kass, Ellrod, Ramirez, Trester, Steven J. Renick, Mildred K. O'Linn, Lynn Carpenter, and Kayleigh Anderson for Petitioners.

No appearance for Respondent.

The Pride Law Firm, Dante T. Pride, Zachary Freire-Avina; Burris, Nisenbaum, Curry and Lacy, DeWitt M. Lacy, Julia N. Quesada, Lena. P. Andrews, and Ayana Curry for Real Parties in Interest.

1

This case arises from a heartbreaking incident in which a mother was shot and killed by a deputy sheriff while her young children looked on.  The case is all the more emotional because at one point, one of the children stood between the mother and the deputy with outstretched hands and yelled, "Stop!"  The child attempted to intervene after the mother, who had been behaving in a manner that concerned residents in an Alta Sierra neighborhood, unsheathed a knife while yelling and then screaming at law enforcement.  A lead deputy explained she was not in trouble and implored her to talk with him, but the mother rejected repeated requests to drop the knife and ultimately advanced quickly toward a backup deputy while raising the knife.  The backup deputy discharged a taser in an effort to use less-lethal force, but when that did not stop the mother from advancing with the knife, the lead deputy fired his service pistol, killing the mother.

What makes this case counter-intuitive is that the trial court concluded the deputy who used lethal force acted reasonably, but the deputy who used less-lethal force arguably acted unreasonably.  After the children, through their guardian ad litem (plaintiffs), sued the deputies and Nevada County (the County) (collectively defendants) for civil claims based on an underlying assertion that the deputies' use of force against the mother was unreasonable, and after defendants moved for summary judgment, the trial court ruled that the claims brought against the lead deputy who shot and killed the mother could not proceed to trial because the lead deputy acted reasonably as a matter of law.  But the trial court ruled that the claims against the backup deputy who used less-lethal force should proceed to trial because a reasonable juror could find that the backup deputy acted unreasonably and in violation of the mother's constitutional rights.  The backup deputy and the County petitioned this court for a writ of mandate challenging the trial court's order, arguing the trial court should have granted their summary judgment motion because the backup deputy acted reasonably as a matter of law given the circumstances.  This court issued an order to show cause.

We have sympathy for the loss and anguish suffered by the children. We also know that when material facts are in dispute, a case should proceed to trial. And we share the concerns engendered by prior tragic cases around the country in which law enforcement officers have acted unreasonably in their use of force. But this is not one of those cases.

With 20/20 hindsight, it might be possible for us to identify alternative actions available to the deputies that would have been more effective in de-escalating or avoiding the confrontation. As we will explain, however, that is not the legal standard we are required to apply in this context. Rather, we need to assess reasonableness from the perspective of a reasonable officer at the scene. Such a standard recognizes the split-second decisions officers must make in dangerous environments.

Based on our review of the record in this case, including the videos of the circumstances surrounding the officer-involved shooting, we conclude the backup deputy acted reasonably as a matter of law. Regardless of the alternatives that were available to the deputies, it is beyond dispute that the mother advanced toward the deputies with a deadly weapon. Plaintiffs do not challenge the trial court's conclusion that the lead officer acted reasonably in responding to that threat with deadly force. Applying the perspective of a reasonable officer at the scene, we conclude no reasonable juror could find unreasonable the actions of the deputy who did not lead the interaction with the mother but instead served as backup and used less-lethal force as the mother charged him with a raised knife.

We will issue a writ of mandate directing the trial court to set aside its partial denial of defendants' summary judgment motion and to enter a new order granting the motion in its entirety.[1]

---

[1] Relying on the general rule that issuance of a writ requires a showing that there is no adequate remedy at law and that irreparable injury will result if the writ is not granted

BACKGROUND

On February 4, 2021, at about 1 p.m., an individual called 911 and reported a woman walking along Alta Sierra Drive with two small children.  The caller, H.H., lived in the neighborhood and briefly spoke to the woman -- later determined to be Ariella Sage Crawford -- about a dog that was loose on the street.  The caller said Crawford acted "really weird" during the interaction.  The caller explained that Crawford and her children had been let inside a nearby house, but a short time later they were again walking along the road.  H.H. opined to the 911 operator that Crawford was "not well" and it was "a terrible road to be walking on with two small children."  H.H. made a second call a short time later to update authorities on Crawford's location.  Around the same time, the person who had let Crawford and the children into her house, J.M., also called 911.  J.M. described Crawford as "really scared."  Crawford told J.M. that she was being followed and asked for a ride to Nevada because someone was hurting her children.  J.M. told Crawford she could not provide a ride.  J.M. called 911 after Crawford and the children left because Crawford was "out there alone in the cold with the two little kids."

Nevada County Sheriff's Deputies Caleb Toderean and Matthew Harrison were dispatched to the area to conduct a welfare check on Crawford and her children.

---

(see *Karen P. v. Superior Court* (2011) 200 Cal.App.4th 908, 912), plaintiffs contend Deputy Matthew Harrison and the County have not shown they are entitled to writ relief. Plaintiffs argue there is an adequate remedy at law, the ability to appeal from any judgment entered against Deputy Harrison and the County after trial.  Plaintiffs also argue these defendants will not suffer irreparable harm because they "do not have a right *not* to stand trial."  But Code of Civil Procedure section 437c, subdivision (m)(1) expressly provides that "any order entered pursuant to the summary judgment statute may be challenged by a petition for peremptory writ."  (*Gackstetter v. Frawley* (2006) 135 Cal.App.4th 1257, 1268.)  Where the undisputed facts and law establish a right to relief, the writ will lie.  A writ of mandamus will issue when the denial of a motion for summary judgment would result in a trial on a nonactionable claim.  (*Irvine Company LLC v. Superior Court* (2023) 96 Cal.App.5th 858, 869; *Union Pacific Railroad Co. v. Superior Court* (2024) 105 Cal.App.5th 838, 848-849.)

Deputy Toderean was the first to arrive and make contact with Crawford. She was walking with her children on the side of a street that intersected Alta Sierra Drive. Deputy Toderean pulled up behind Crawford, stepped out of his patrol car, identified himself, and asked if she would stop and talk with him. Crawford did not respond and continued walking with the children. Deputy Harrison arrived as Deputy Toderean was stepping out of his patrol car to make contact with Crawford. Deputy Harrison pulled up behind Deputy Toderean's patrol car and also got out of his vehicle. It was Deputy Harrison's understanding that he was there to provide backup while Deputy Toderean took the lead in communicating with Crawford. The circumstances that followed were captured on both of the deputies' dash cams. Undisputed deposition testimony from the deputies also described the circumstances.

Deputy Toderean walked to the front of his patrol car and told Crawford, "You're not in trouble or anything like that." Deputy Harrison stood several feet behind and to the left of Deputy Toderean, parallel with the left rear of the patrol car. Crawford turned to face the deputies, unsheathed a knife, and said: "I know what you did to my babies." Deputy Toderean drew his service pistol, held it in a "low ready" position pointed at the ground in front of him, and said: "I'm not gonna touch your babies but I need you to put your knife away." Deputy Toderean also reported by radio, "She has a knife." Deputy Harrison, still behind Deputy Toderean at the left rear of Deputy Toderean's patrol car, drew his taser, held it by his side, and informed Deputy Toderean: "I got taser."

Crawford said: "Don't hurt my babies." Deputy Toderean repeatedly said, "I'm not gonna hurt your babies." Crawford held the knife out in front of her, holding it in her right hand with the blade of the knife extending from the little-finger side of her hand. As she held the knife, she also pointed her index finger at the deputies and raised her voice, yelling that everyone in the whole world would know if anything happened to her and her babies. Crawford raised her voice again, screaming, "Everyone in the whole world!" She then screamed and advanced toward Deputy Toderean. As Crawford

approached Deputy Toderean with the knife, Deputy Toderean backed up to give her space. He backed up to around the left middle of his vehicle.

As Deputy Toderean backed up, Deputy Harrison walked around the back and right side of the patrol car and stood in the street at the right front of the vehicle. Deputy Harrison explained in his deposition that he did so to place himself in a better position to assist. Deputy Harrison again informed Deputy Toderean: "I got taser."

When Deputy Harrison got to the front of the car, Crawford alternated her focus between him and Deputy Toderean, telling both of them not to touch her babies. One of Crawford's children then stepped in front of her, put one hand out toward Crawford and the other hand out toward Deputy Toderean, and yelled, "Stop!" Crawford pulled her child away and continued to yell at the deputies. Deputy Toderean stated repeatedly, "I just want to help you out." Crawford yelled in response: "I know who you are! Everyone knows who you are! You can't hide from God!" At that point, one of Crawford's children started walking toward Deputy Toderean. Crawford quickly followed the child with the knife at her side. Deputy Toderean again stepped back to give Crawford space, this time past the left rear of his vehicle.

As Crawford approached Deputy Toderean on the driver's side of the patrol car, Deputy Harrison came around the front of the car to maintain a line of sight with Deputy Toderean. Crawford saw Deputy Harrison's movement, turned to face him, and raised the knife. Deputy Harrison backed up into the street and twice told her to put the knife down. Crawford yelled "No!" and then screamed "No!" Deputy Toderean said, "I need you to put the knife down," to which Crawford yelled, "I don't give a fuck." Deputy Toderean repeatedly said, "talk to us." Crawford then collected the child that was between her and Deputy Toderean and made her way back to the front of the patrol car, holding the knife out toward Deputy Toderean as she did so. Crawford continued yelling: "Everyone knows who you are. Everyone fucking knows who you are."

Seconds later, the same child approached Deputy Toderean again on the left side of the patrol car. Crawford took several quick steps toward Deputy Toderean with the knife at her side, continuing to yell at him as he backpedaled past the back of his patrol car. Deputy Harrison again came around the front of the car with the taser. Deputy Harrison explained his reasoning for doing so: "She was going towards Deputy Toderean. I could no longer see him. Based on her actions, I had every reason to believe that she was a threat to him. I couldn't see him and I wouldn't be able to respond from that position." As Deputy Harrison followed Crawford, she suddenly turned and quickly advanced toward him while raising the knife. Deputy Harrison discharged the taser, but Crawford continued to run toward Deputy Harrison with the knife, chasing him into the street. Deputy Toderean followed and shot Crawford in the back with his service pistol. Crawford did not survive.

The foregoing events occurred in less than two minutes. At the time the deputies pulled up to make contact with Crawford, they knew that other deputies were on their way to the scene, including Sergeant Haack, who was trained in crisis negotiation and had additional de-escalation training.

Plaintiffs sued Deputy Toderean, Deputy Harrison, and the County, asserting causes of action for negligence, wrongful death, and negligent infliction of emotional distress. They asserted a separate cause of action against Deputy Harrison under the Tom Bane Civil Rights Act (Bane Act). (Civ. Code, § 52.1, subd. (a).) Each claim was based on an underlying assertion that the deputies' use of force against Crawford was unreasonable. Plaintiffs' Bane Act claim asserted that Deputy Harrison's unreasonable conduct constituted interference or attempted interference, by threats, intimidation, or coercion, with Crawford's constitutional rights.

Defendants moved for summary judgment. With respect to plaintiffs' negligence-based claims (negligence, wrongful death, and negligent infliction of emotional distress), defendants argued the claims failed as a matter of law because the evidence showed that

7

the deputies used objectively reasonable force under the totality of the circumstances. With respect to the Bane Act claim asserted against Deputy Harrison, defendants argued the claim failed "because there is no evidence that Deputy Harrison had the specific intent to violate Crawford's rights." Defendants also argued the County was entitled to summary judgment as to all claims because the deputies are not liable and thus the County cannot be liable.

The trial court granted summary judgment for Deputy Toderean, concluding he acted reasonably as a matter of law throughout his interaction with Crawford and did not unreasonably use deadly force against her. The trial court denied the motion with respect to Deputy Harrison, however, concluding a reasonable juror could find that his preshooting conduct was unreasonable, specifically his decision to close the distance between himself and Crawford and his subsequent decision to deploy his taser. With respect to the Bane Act claim, the trial court concluded a reasonable juror could find that Deputy Harrison acted with reckless disregard for Crawford's constitutional rights. The trial court also denied the County's motion for summary judgment to the extent it could be held vicariously liable for Deputy Harrison's conduct.

## DISCUSSION

Deputy Harrison and the County contend the trial court should have granted their motion for summary judgment because Deputy Harrison acted reasonably under the circumstances as a matter of law. We agree.

### A

"The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.)

"A defendant's motion for summary judgment should be granted if no triable issue exists as to any material fact and the defendant is entitled to a judgment as a matter of

law.  [Citation.]  The burden of persuasion remains with the party moving for summary judgment.  [Citation.]"  (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1002-1003; see Code Civ. Proc., § 437c, subd. (c).)  Thus, "[a] defendant moving for summary judgment 'bears the burden of persuasion that "one or more elements of" the "cause of action" in question "cannot be established," or that "there is a complete defense" thereto.  [Citation.]'  [Citations.]  The defendant also 'bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact.'  [Citation.]  . . .  If the defendant carries this burden, the burden of production shifts to the plaintiff 'to make a prima facie showing of the existence of a triable issue of material fact.'  [Citation.]"  (*Villalobos v. City of Santa Maria* (2022) 85 Cal.App.5th 383, 388 (*Villalobos*).)

" 'On review of an order granting or denying summary judgment, we examine the facts presented to the trial court and determine their effect as a matter of law.'  [Citation.]  We review the entire record, 'considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained.'  [Citation.]  Evidence presented in opposition to summary judgment is liberally construed, with any doubts about the evidence resolved in favor of the party opposing the motion."  (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.)  However, an opposing "plaintiff's evidence remains subject to careful scrutiny" and "[w]e can find a triable issue of material fact 'if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the [plaintiff] in accordance with the applicable standard of proof.'  [Citation.]"  (*King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433.)

B

Although plaintiffs' negligence-based causes of action (negligence, wrongful death, and negligent infliction of emotional distress) have distinct elements, we need not address each cause of action individually, because the underlying basis for all of the

9

alleged liability is the assertion that the deputies' use of force against Crawford was unreasonable. (See *Brown v. Ransweiler* (2009) 171 Cal.App.4th 516, 534 (*Brown*) [where use of force is objectively reasonable under the circumstances, there can be no negligence liability].) Similarly, plaintiffs' Bane Act claim against Deputy Harrison requires proof that he interfered or attempted to interfere with Crawford's exercise or enjoyment of a constitutional or statutory right. (Civ. Code, § 52.1.) That claim is also based on Deputy Harrison's alleged unreasonable conduct during the interaction with Crawford. Accordingly, if the deputies acted reasonably as a matter of law, there is no liability on any of the causes of action.

Plaintiffs do not specifically dispute that Deputy Toderean was justified in using deadly force when Crawford charged at Deputy Harrison with the knife. Any assertion to the contrary would be incorrect: " ' "[A]n officer may reasonably use deadly force when he or she confronts an armed suspect in close proximity whose actions indicate an intent to attack. In these circumstances, the Courts cannot ask an officer to hold fire in order to ascertain whether the suspect will, in fact, injure or murder the officer." ' " (*Villalobos, supra*, 85 Cal.App.5th at p. 389.) Instead, plaintiffs' claimed triable issues of material fact are based on Deputy Harrison's preshooting conduct. They argue Deputy Harrison's unreasonable conduct created the need for Deputy Toderean to use deadly force against Crawford.

The following principles guide our analysis. In *Hayes v. County of San Diego* (2013) 57 Cal.4th 622 (*Hayes*), the California Supreme Court held that "[t]he reasonableness of an officer's conduct is determined in light of the totality of circumstances," including "the preshooting conduct of the officers" involved in the shooting incident. (*Id*. at p. 629.) In addition, " '[t]he "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.' [Citation.]" (*Id.* at p. 632.) " 'As long as an officer's conduct falls within the range of conduct that is reasonable under the

10

circumstances, there is no requirement that he or she choose the "most reasonable" action . . . .' [Citation.]" (*Ibid*.) "Law enforcement personnel have a degree of discretion as to how they choose to address a particular situation. Summary judgment is appropriate when the trial court determines that, viewing the facts most favorably to the plaintiff, no reasonable juror could find [the use of force was unreasonable]." (*Ibid*.)

This standard "reflects deference to the split-second decisions of an officer and recognizes that, unlike private citizens, officers may use deadly force." (*Lopez v. City of Los Angeles* (2011) 196 Cal.App.4th 675, 685.) " ' "We must never allow the theoretical, sanitized world of our imagination to replace the dangerous and complex world that [officers] face every day. What constitutes 'reasonable' action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure." [Citation.]' [Citation.] [Such a standard] 'gives the police appropriate maneuvering room in which to make such judgments free from the need to justify every action in a court of law.' [Citation.]" (*Brown, supra*, 171 Cal.App.4th at p. 528; see also Pen. Code, § 835a, subd. (a)(4) ["the decision by a peace officer to use force shall be evaluated from the perspective of a reasonable officer in the same situation, based on the totality of the circumstances known to or perceived by the officer at the time, rather than with the benefit of hindsight, and . . . the totality of the circumstances shall account for occasions when officers may be forced to make quick judgments about using force"].)

C

Plaintiffs argue there is a triable issue of material fact as to whether Deputy Harrison acted reasonably in closing the distance between himself and Crawford immediately before he deployed the taser. Not so. The undisputed evidence establishes that right before Crawford advanced toward Deputy Harrison while raising the knife and Deputy Harrison deployed the taser, Crawford had been screaming and advancing toward Deputy Toderean with the knife, and Deputy Toderean had been retreating to the rear of his patrol car through the narrow space between the patrol car and a ditch.

11

Deputy Harrison testified: "She was going towards Deputy Toderean. I could no longer see him. Based on her actions, I had every reason to believe that she was a threat to him. I couldn't see him and I wouldn't be able to respond from that position." Plaintiffs submitted no evidence casting any doubt on Deputy Harrison's explanation. Applying the perspective of a reasonable officer at the scene, no reasonable juror could conclude Deputy Harrison's movement to maintain line of sight with Deputy Toderean was unreasonable as Crawford screamed and advanced toward Deputy Toderean with a deadly weapon.

Plaintiffs also argue there is a triable issue of material fact as to whether Crawford made any threatening movements with the knife that a reasonable officer would have perceived as an immediate threat. We disagree. Again applying the perspective of a reasonable officer at the scene, no reasonable juror could conclude that Crawford would not have been perceived as an immediate threat when she screamed and advanced toward Deputy Toderean with the knife and then suddenly turned and quickly advanced toward Deputy Harrison while raising the deadly weapon.

In addition, plaintiffs assert there is a triable issue of material fact as to whether Deputy Harrison acted reasonably in failing to warn Crawford before he deployed the taser. Plaintiffs acknowledge, however, that feasibility and risk are relevant in assessing whether the omission of a warning was reasonable. Deputy Harrison did not deploy the taser until Crawford suddenly turned and quickly advanced toward him while raising the knife. It was not feasible to warn her in the instant she turned and advanced.

Plaintiffs further claim there is a triable issue of material fact as to whether Deputy Harrison acted reasonably in deploying the taser. But again, Deputy Harrison did not deploy the taser until Crawford suddenly turned and quickly advanced toward him while raising the knife. No reasonable juror could conclude that firing the less-lethal taser in that circumstance was unreasonable.

The final specific factual issues raised by plaintiffs are whether Deputy Harrison was, or should have been, aware that Crawford was in the midst of a mental health crisis and whether he followed his training regarding welfare checks and contacting individuals with mental illness. These purportedly disputed facts are either not disputed or not material to the ultimate question whether the challenged use of force was reasonable. " 'In order to prevent the imposition of a summary judgment, the disputed facts must be "material," i.e., relate to a claim or defense in issue which could make a difference in the outcome.' [Citation.]" (*Villalobos, supra*, 85 Cal.App.5th at p. 390.) As plaintiffs correctly observe later in their return to the order to show cause, "[i]t is undisputed that [Harrison] believed [Crawford] could have been in the midst of a mental health crisis even before arriving on scene."

As to whether Deputy Harrison followed his training, a general order governing officer conduct in specific situations does not establish the standard of care for the use of force. Rather, officers have a duty to act reasonably when using force, and the reasonableness of an officer's conduct is determined in light of the totality of the circumstances. (*Koussaya v. City of Stockton* (2020) 54 Cal.App.5th 909, 939.) "If a general order set the standard of care, then violation of the order would automatically mean a breach of the standard has occurred. That is not the law." (*Ibid*.)

Here, even if the deputies' training required better or more reasonable actions, it would not alter our conclusion given the totality of the circumstances. As we have explained, we must resist the urge to apply 20/20 hindsight to our analysis. (*Hayes, supra*, 57 Cal.4th at p. 632.) As long as Deputy Harrison's actions were within the range of what was reasonable under the circumstances, he need not have chosen the " ' "most reasonable" ' " action. (*Ibid*.) Deputy Harrison did not lead the interaction with Crawford and did not use lethal force against her. He used less-lethal force only after Crawford suddenly turned and quickly advanced toward him while raising the knife. It was Deputy Toderean who led the interaction with Crawford and who used lethal force

against her, actions that were found reasonable as a matter of law.  In this proceeding, plaintiffs do not challenge the ruling in favor of Deputy Toderean.  Applying the perspective of a reasonable officer at the scene, no reasonable juror could conclude that Deputy Harrison's actions were unreasonable.

Because each cause of action asserted against Deputy Harrison was based on the underlying assertion that unreasonable force was used against Crawford, and because no reasonable juror could so find, the trial court should have granted summary judgment in his favor.  And because the County's alleged liability is purely vicarious, the trial court should have granted summary judgment in the County's favor as well.

## DISPOSITION

Let a peremptory writ of mandate issue directing the respondent court to set aside its partial denial of defendants' summary judgment motion and enter a new order granting the motion in its entirety.  Costs are denied in the interests of justice.  (Cal. Rules of Court, rule 8.493(a)(1)(B).)


/S/
MAURO, J.


We concur:


/S/
ROBIE, Acting P. J.


/S/
FEINBERG, J.